UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                     -against-         **MEMORANDUM OF**
                                                      **DECISION AND ORDER**
RW PROFESSIONAL LEASING SERVICES   02 CR 767 (ADS) (MLO)
CORP., also known as "Professional Leasing
Services," ROCHELLE BESSER, also known
as "Rochelle Drayer," BARRY DRAYER,
ROGER DRAYER, ADAM DRAYER,
MYRNA KATZ, STEPHEN BARKER, and
PAYADDI SHIVASHANKAR

                                             Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**ROSLYNN R. MAUSKOPF, UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, NY 11722
       By:    Geoffrey R. Kaiser, Assistant U.S. Attorney

**FRANKEL & ABRAMS**
Attorneys for the Defendant RW Professional Leasing Services Corp.
230 Park Avenue
New York, NY 10169
       By:    Stuart E. Abrams, Esq., Of Counsel

**SIMON & PARTNERS LLP**
Attorneys for the Defendant Rochelle Besser
30 Rockefeller Plaza, 42nd Floor
New York, NY 10112
       By:    Bradley D. Simon, Esq.
                 Kenneth C. Murphy, Esq., Of Counsel

**ELIZABETH MACEDONIA, P.C.**
Attorneys for the defendant Barry Drayer
42-40 Bell Blvd
Suite 302
New York, NY 11361
    By:    Elizabeth E Macedonio, Esq.,
            Steve Zissou, Esq., Of Counsel

**JAMES C. NEVILLE, ESQ.**
Attorney for the Defendant Roger Drayer
P.O. Box 1711
16 North Washington Street
Port Washington, NY 11050

**GROSSMAN & RINALDO**
Attorneys for the Defendant Adam Drayer
225 Broadway, Suite 2510
New York, NY 10007
    By:    Paul Rinaldo, Esq., Of Counsel

**GOTLIN & JAFFE**
Attorneys for the Defendant Susan Cottrell
100 Lafayette Street
New York, NY 10013
    By:    Daniel Gotlin, Esq., Of Counsel

**JOHN S. WALLENSTEIN, ESQ.**
Attorney for the Defendant Myrna Katz
220 Old Country Road
Mineola, NY 11501

**CRAIG M. LYTLE, ESQ.**
Co-counsel for the Defendant Stephen Barker
2316 Artesia Blvd.
Redondo Beach, CA 90278

**TERRENCE P. BUCKLEY, ESQ.**
Co-counsel for the Defendant Stephen Barker
One Suffolk Square, Suite 520
Islandia, NY 11722

**SPATT, District Judge.**

This case involves charges of conspiracy to commit bank fraud, wire fraud, and money laundering. Presently before the Court are objections by defendant RW Professional Leasing Services, Corp. ("PLS"), to the Report and Recommendation ("Report") dated June 23, 2004, of United States Magistrate Judge Michael L. Orenstein. The Report recommended that the Court deny the defendants' joint pretrial motion to suppress evidence that was allegedly unlawfully seized from PLS offices by Frank Zambaras ("Zambaras"), who was identified as a confidential source in a subsequent application for a search warrant.

## I. BACKGROUND

### A. Procedural History

The background of this case is incorporated in this Court's three previous memoranda dated May 4, 2004, August 5, 2004, and December 7, 2004. Familiarity with these decisions is assumed. In the May 4, 2004 decision, the defendants' motion to suppress evidence seized by Zambaras was referred to Judge Orenstein to conduct a suppression hearing and report on whether such evidence should be suppressed. On June 22 and 23, 2004, Judge Orenstein conducted a suppression hearing at which

Zambaras and Special Agent Rondie Peiscop-Grau of the Federal Bureau of Investigations ("Special Agent Peiscop-Grau") testified.

At the conclusion of the hearing, Judge Orenstein issued a Report that recommended denying the Defendants' motion to suppress the documents obtained by Zambaras. PLS timely objected to Judge Orenstein's recommendation and argued that Judge Orenstein applied too narrow a legal standard in denying the motion because the court purportedly did not consider whether the government gave "tacit" approval to Zambaras's unlawful conduct.

**B.     The Suppression Hearing**

Zambaras testified at the hearing that he was an equipment leasing broker who worked as a contractor for PLS from 1992 to 2002. Zambaras admitted that while working for PLS he was directed by defendant Roger Drayer to fraudulently alter checks. In the beginning of June, 2002, Zambaras notified Roger Drayer that he was terminating his contractual relationship with PLS because it was no longer able to fund his leasing deals.

Also sometime in early June 2002, Zambaras contacted the FBI and made a complaint about fraudulent activities at PLS. On June 12, 2002, Zambaras met with Special Agent Peiscop-Grau and supplied her with information concerning fraudulent activity at PLS. At the meeting, Zambaras indicated that he had previously removed documents and a CD-ROM from PLS that contained evidence confirming the

4

information about the fraudulent activities. Zambaras testified that Special Agent Peiscop-Grau admonished him for removing property from PLS because he had no authority to take such materials. She further directed him to retain the materials.

On June 18, 2002, Zambaras and Special Agent Peiscop-Grau met for a second time. At the meeting Zambaras gave her a box containing the records that were discussed at the previous meeting as well as additional records gathered from PLS after the first meeting. Special Agent Peiscop-Grau again admonished Zambaras for removing property from PLS offices. Although both Zambaras and Special Agent Peiscop-Grau testified that she told Zambaras that he was not a government agent and was not authorized to take documents from PLS, she did not refer to this instruction in her "Form 302," which is the form used to memorialize an agent's meeting with an individual.

On June 20, 2002, Special Agent Peiscop-Grau executed an affidavit in support of an application for a warrant to search PLS's offices, which referred to documents that Zambaras had taken from PLS. On June 21, 2002, the FBI executed the search of PLS offices pursuant to the search warrant obtained. Zambaras was asked to assist, and did assist, the government agents in searching the PLS offices pursuant to the warrant.

C.     **Magistrate Judge Orenstein's Report and Recommendation**

Judge Orenstein found that the taking of the documents and information from PLS after Zambaras met with Special Agent Peiscop-Grau was done while he was acting on his own behalf, and not on behalf of the government. Specifically, Judge Orenstein noted that when Zambaras met with Agent Peiscop-Grau, Zambaras indicated that he had already taken the documents but did not have them with him. Also, during the discussions the agent admonished and warned Zambaras that he was not acting undercover; was not authorized to take documents; and that he did not have any authority to take documents. In response, Zamabaras testified that he knew he had no authority to take documents, but testified that he felt it was critical that he take them so that they would not be destroyed.

Judge Orenstein concluded that it was immaterial whether Special Agent Peiscop-Grau had knowledge or believed that Zambaras was going to take additional materials from PLS. Instead, Judge Orenstein emphasized that the issue was whether the Special Agent told "him or [did] anything which either required, asked, recruited, requested, encouraged, [or] importuned Zambaras to obtain the documents." Suppression Hr'g Tr. 306–07, June 23, 2004. Judge Orenstein found that "there has not been one shred or scintilla of evidence that the government tacitly involved itself in Mr. Zambaras' independent act of taking documents after June 12, 2002." Hr'g Tr. 307–08.

Further, Judge Orenstein found that it was proper for Special Agent Peiscop-Grau to accept the documents from Zambaras, even though they may have been obtained by theft or burglary. Judge Orenstein noted that as soon as Special Agent Peiscop-Grau received the documents, she sought advice from the Assistant United States Attorney as to whether it was proper to take the documents.

## II. DISCUSSION

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), any party may file written objections to the report and recommendation of a magistrate judge within ten days after being served with a copy. Id.; see also Fed. R. Civ. P. 72(a). Once objections are filed, the district court is required to make a de novo determination as to those portions of the report and recommendation to which objections were made. See 28 U.S.C. § 636(b)(1); Brassia v. Scull, 892 F.2d 16, 19 (2d Cir. 1989). The phrase "de novo determination" in section 636(b)(1)—as opposed to "de novo hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Radios, 447 U.S. 667, 676, 100 S. Ct. 2406 (1980).

Section 636 does not require the district court "to rehear the contested testimony in order to carry out the required 'determination.' " Id. at 674. Rather, in making such a determination, the district court may, in its discretion, review the

record and hear oral argument on the matter. See Pan Am. World Airways, Inc. v. International Brotherhood of Teamsters, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). Furthermore, the district judge may also, in his sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendations. See U.S. v. Radios, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).

### B.     Surreptitious Search and Seizure by a Private Party

It has long been settled that "a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and that such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully." Walter v. United States, 447 U.S. 649, 656, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980); see also Burdeau v. McDowell, 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921). The Second Circuit has stated that the "surreptitious search of premises by a private party does not violate the Fourth Amendment" unless such individual is acting as an instrument or agent of the government in obtaining evidence. United States v. Bennett, 709 F.2d 803, 805 (2d Cir. 1983). If the government "was in it before the object of the search was completely accomplished [by the private party, it] must be deemed to have participated in it." Id. (quoting Lustig v. United States, 338 U.S. 74, 78–79, 93 L. Ed. 1819, 69 S. Ct. 1372 (1949)). It is "'immaterial' whether the government originated the idea for a search or joined it while it was in

progress." United States v. Knoll, 16 F.3d 1313, 1320 (2d Cir. 1994) (quoting Lustig, 338 U.S. at 78–79).

"Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of the circumstances." Skinner v. Rwy. Labor Executives Assoc., 489 U.S. 602, 614, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (citations omitted). The Second Circuit has noted that "[t]he government may become a party to a search through nothing more than tacit approval." Knoll, 16 F.3d at 1320 (citing 1 Wayne R. LaFave, Search & Seizure § 1.8(b), at 180 (2d ed. 1987)). In Knoll, the Second Circuit recognized that private individuals may be considered acting as government agents if the government directs their actions or tacitly approves of whatever measures were taken to seize the evidence. Id. Thus, the protections of the Fourth Amendment are invoked if the government directs or tacitly approves of a surreptitious search by private individuals.

C.  **PLS Objections to the Report and Recommendation**

PLS argues that Judge Orenstein applied too narrow a legal standard in recommending that the defendants' motion to suppress be denied because the Report failed to fully apply the Second Circuit's ruling in Knoll.. The Court disagrees. The

9

Report issued by Judge Orenstein clearly embraces the legal standards enunciated in Knoll. The Report states:

> [t]he issue before the Court is whether there was tacit approval of Mr. Zambaras's activities on or after June 12 . . . .
>
> . . . .
>
> This Court specifically finds that there has not been one shred or scintilla of evidence that the government tacitly involved itself in Mr. Zambaras' independent act of taking documents after June 12, 2002.

H'rg Tr. 304, 308.

PLS argues that Knoll requires a court to look beyond the formal relationship between the government and private party and to consider the "reality" of the relationship. While the Court agrees that it is essential to perform a critical analysis of the relationship between the private party and the government, the Court cannot disregard the evidence or make assumptions about the "reality" of the relationship that are not supported by the evidence. In Knoll, there was testimony that the government agent encouraged the private party after learning of the surreptitious search by making statements such as "get me more information," "you've got to turn more over," and "[i]f there's stuff out there, you've got to turn it over." Knoll, 16 F.3d at 1320. The Second Circuit reasoned that these statements, made prior to the carrying out the private search, may have tacitly approved such conduct.

In this case there was absolutely no evidence that the government directed, encouraged, or tacitly approved of Zambaras' actions. Both Zambaras and Special Agent Peiscop-Grau testified that she told Zambaras that he was not a government

10

agent and was not authorized to take documents from PLS. After their first meeting, Special Agent Peiscop-Grau did not encourage Zambaras to obtain additional documents. Rather, she repeatedly admonished Zambaras for taking the materials. Also, instead of asking Zambaras to seize additional evidence, Special Agent Peiscop-Grau immediately sought advice from an Assistant United States Attorney and a search warrant from the court. In sum, there is absolutely no evidence in the record that the government directed or tacitly approved the search and seizure executed by Zambaras. Therefore, the Court finds that Judge Orenstein correctly determined that Zambaras was not acting as a government agent in any way.

After carefully reviewing Judge Orenstein's well-reasoned and thorough Report, the Court concludes that his Report is certainly not clearly erroneous. Judge Orenstein applied the proper standard and reasonably applied the facts obtained from all the testimony given at the suppression hearing to the law. Accordingly, the Court adopts Judge Orenstein's Report and denies the motion to suppress the evidence.

### III. CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED**, that the Court adopts Judge Orenstein's Report in its entirety; and it is further

**ORDERED**, that the defendants motion to suppress the evidence obtained by Zambaras is denied.

**SO ORDERED.**

Dated: Central Islip, New York
August 30, 2005

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge
